UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
IN RE                                                                                  Chapter 11

    AVON PLACE LLC,                                              Case No.  25-41368 (JMM)

                              Debtor.
----------------------------------------------------------x
AVON PLACE LLC,

                           Plaintiff,
         v.                                                                            Adv. Proc. 25-01062(JMM)

44 AVONWOOD ROAD CREDIT LLC,

                           Defendant.
----------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Debtor, Avon Place LLC ("*Debtor*"), respectfully submits this brief in support of its application for the issuance of a temporary restraining order and preliminary injunction enjoining the action proceeding in the Connecticut Superior Court at the Judicial District of Hartford under the caption *44 Avonwood Road Credit LLC v. Avon Place LLC, et al*., Docket No. HHD-CV25-6199961-S (the "*Guaranty Action*") as against Ahron Rudich, the Debtor's beneficial owner, pursuant to 11 U.S.C. § 105(a). Alternatively, the Debtor respectfully requests that the automatic stay be extended to Mr. Rudich pursuant to 11 U.S.C. § 362.

## PRELIMINARY STATEMENT

The Debtor is forced to bring this adversary proceeding and application for injunctive and temporary relief to stop an alleged creditor, 44 Avonwood Road Credit LLC ("*Avonwood Credit*"), from continuing to run roughshod over the Debtor's principal - Ahron Rudich - in Connecticut state court in connection with sham claims under personal guaranties that backstop the mortgage loans issued to the Debtor. Indeed, the Debtor's reorganization efforts have been imperiled by Avonwood Credit's continued attempts in the Guaranty Action to do through the back door what it cannot do through the proverbial "front door": avoid the automatic stay and imperil the Debtor's reorganization to place its rights above all others. Indeed, the Guaranty Action, in addition to presenting a collateral estoppel risk to the Debtor, interferes with the Debtor's use of its most viable source of plan funding—by and through Mr. Rudich.

The Guaranty Action is part-and-parcel of a bad faith and scorched-Earth litigation strategy engineered by Avonwood Credit's principal, Kyle O'Hehir. Mr. O'Hehir, is a social media personality who brazenly touts his propensity to acquire debt on commercial assets solely for purposes of torturing and preying on commercial borrowers. In online videos, Mr. O'Hehir describes his approach as capitalizing on technical defaults, an area where there is purportedly money to be made by taking advantage of same (traditional banking norms notwithstanding).

According to Mr. O'Hehir, "banks don't want to be mean to the borrower" but there is "*an opportunity in the market for a bad guy*." Mr. O'Hehir fancies himself that "bad guy," and Avonwood Credit is certainly acting the part.

At present, the Debtor has filed its Disclosure Statement and Plan of Reorganization (the "*Plan*") and requested a confirmation hearing. In brief, the Plan is structured to maximize creditor recoveries by curing defaults and restoring loans that are the subject of the Guaranty Action to their original terms, by refinancing and/or selling the property securing the loans. Indeed, as the sole equity holder, Mr. Rudich has been actively pursuing potential financing sources to support the Plan, including using personal assets and his personal creditworthiness as collateral or financial backing.

These efforts have already resulted in negotiations with a third-party that is actively considering a refinancing in the $31 million range, which amount may be sufficient to repay all creditors with a capital contribution from Mr. Rudich. The Guaranty Action against Mr. Rudich, including **Avonwood Credit's pending prejudgment attachment and summary judgment applications**, threatens the reorganization not only by impairing Mr. Rudich's ability to make a capital contribution but also by impairing refinancing, which may require a personal guarantee or other security from Mr. Rudich. In other words, the Guaranty Action directly impairs the Debtor's reorganization and plan confirmation efforts.

These atypical circumstances warrant a stay of the Guaranty Action as against Mr. Rudich. As elaborated upon below, the Debtor can satisfy the standard for the issuance of a temporary restraining order and injunction under 11 U.S.C. § 105(a), which consists of essentially the traditional injunction factors. *First*, the Debtor's reorganization is likely to be successful. The Debtor is moving quickly and in good faith through the reorganization process. Debtor has already

filed its Plan, and is in negotiations concerning a refinance.  *Second*, the Guaranty Action indisputably poses the risk of immediate and irreparable harm to the Debtor and the bankruptcy estate by its inevitable impairment of the reorganization process and prejudice to the Debtor's rights in the Guaranty Action.  *Third*, the balance of the equities certainly favors the issuance of an injunction – while there is significant, ongoing, and irreparable harm to the Debtor if the Guaranty Action proceeds, Avonwood Credit would not be harmed by the requested relief. *Finally*, the public interest is served by an efficient and effective reorganization process.  It is not served by the condoning of actions, implicitly or explicitly, that are aimed at vitiating the protections of the automatic stay's "breathing room."

A stay would also be appropriate under 11 U.S.C. § 362(a) for the same reasons.  Although the automatic stay is not always applied to non-debtors, it can be applied when necessary protect the bankruptcy estate and process, which is the case here as described below.  For these reasons, further elaborated upon herein, this application should be granted.

## STATEMENT OF FACTS

The facts pertinent to the resolution of this application are detailed in the Declaration of David Goldwasser dated June 10, 2025 (the "*Goldwasser Decl.*"), the Declaration of Lou Dagostine dated June 10, 2025 ("*Dagostine Decl.*"), with exhibits, and the Declaration of Ahron Rudich dated June 10, 2025 ("*Rudich Decl.*"), with exhibit.  For the sake of brevity, those facts will not be repeated herein and are incorporated by reference.  The capitalized terms used in those Declarations will be accorded the same meaning herein unless otherwise defined.

**LEGAL ARGUMENT**

### I. THE GUARANTY ACTION IS "RELATED TO" THE PENDING BANKRUPTCY PROCEEDING.

As a threshold matter, the Court can exercise subject matter jurisdiction over the Guaranty Action. Under 28 U.S.C. § 1334, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See* 28 U.S.C. § 1334(b). "Related to" jurisdiction is established in the Second Circuit when the outcome of a civil proceeding will have a "conceivable effect" on the bankruptcy estate. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (citations and quotations omitted). Put differently, "an action is related to [a] bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 136-37 (Bankr. S.D.N.Y. 2002) (quoting *Weisman v. Southeast Hotel Prop. Ltd. P'ship*, No. 91-6232, 1992 WL 131080 (S.D.N.Y. June 1, 1992); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). "[P]roceedings that are 'related to' a Title 11 case are automatically referred to the Bankruptcy Court." *Korea Exch. Bank v. Kirtie Regan, Inc.*, No. 05-8597, 2006 WL 2034681, at *1 (S.D.N.Y. July 20, 2006) (citations omitted).

The "related to" standard is indisputably satisfied here. Avonwood Credit is pursuing claims against Mr. Rudich in the Guaranty Action as the guarantor of the Debtor's debt. (*See* Dagostine Decl., Ex. A.) For this reason alone the "related to" standard is satisfied. *Merrill Lynch Mortg. Cap. Inc. v. Esmerian*, No. 08-5058, 2008 WL 2596369, at *1 (S.D.N.Y. June 30, 2008) ("[a] creditor's claim against the guarantor of a bankrupt debtor's obligations is a textbook example of a 'related' proceeding because the guarantor may invoke its right to subrogation or, upon satisfying the obligation, seek indemnification or reimbursement from the bankrupt debtor[]"

(citations omitted)); *see also In re Hypnotic Taxi, LLC*, No. 15-43300, 2017 WL 4464876, at *1 (Bankr. E.D.N.Y. Oct. 4, 2017) ("the vast majority of district-court and bankruptcy-court decisions in this Circuit consider actions on an insider's guarantee to fall within the 'related-to' jurisdiction of the bankruptcy court[]" (citation and quotations omitted)).

Equally as compelling, the Guaranty Action threatens to derail Plan funding, jeopardize ongoing refinancing negotiations, and impair the Debtor's ability to effectuate the Plan, all of which have a "conceivable effect" on the bankruptcy estate. The Plan is dependent on reinstating the Loans, which are the core of the Guaranty Action, and then paying them in full which requires Mr. Rudich's participation, creditworthiness, and assets. (*See, e.g.*, Goldwasser Decl. at ¶¶ 4-7.) Avonwood Credit has moved for prejudgment attachment of Mr. Rudich's assets as well as a judgment as to liability against him. (Dagostine Decl. at ¶ 6 & Exs. H-J.) The granting of either application would freeze Mr. Rudich's access to credit, chill negotiations, prevent equity contributions necessary for Plan confirmation, and undermine the Debtor's negotiations with Trevian Capital, which is actively considering a refinancing in the $31 million range. (Rudich Decl. at ¶ 8.) As the most viable option for effectuating the Plan, this would be fatal to the Debtor's reorganization efforts. Consequently, the Court's jurisdiction over this matter cannot, respectfully, be legitimately disputed.

## II.    A STAY OF THE GUARANTY ACTION IS WARRANTED AND APPROPRIATE UNDER 11 U.S.C. § 105.

Pursuant to 11 U.S.C. § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of…" the Bankruptcy Code. *Id.*; *see also* Fed. R. Bank. P. 7065 (injunctions may issue in bankruptcy adversary proceedings). This power "is properly used…" in the Second Circuit "to enjoin creditors' lawsuits against third parties where 'the injunction plays an important part in the debtor's reorganization plan' or where the action to

be enjoined 'will have an immediate adverse economic consequence for the debtor's estate.'" *In re Purdue Pharms. L.P.*, 619 B.R. 38, 57 (S.D.N.Y. 2020) (citations omitted); *see also Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 211 (2d Cir. 2014) ("[W]e have held that a court has the power pursuant to section 105(a) to enjoin claims against a non-debtor third party where those claims are derivative, or otherwise "pose[ ] the specter of direct impact on the *res* of the bankrupt estate[.]" (citation and internal citation omitted)); *In re Lazarus Burman Assocs.*, 161 B.R. 891, 897 (E.D.N.Y. 1993) ("The Bankruptcy Court has the power to issue an injunction to preserve the orderly conduct and integrity of reorganization proceedings." (citations omitted)). Put differently, the bankruptcy court may 'enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it.'" *In re Chateaugay Corp.*, 201 B.R. 48, 71 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997).

In assessing whether the issuance of an injunction is necessary and appropriate under the circumstances, the courts rely on the traditional preliminary injunction analysis "as modified to fit the bankruptcy context." *In re Lyondell Chem. Co.*, 402 B.R. 571, 588 (Bankr. S.D.N.Y. 2009) (citation and quotations omitted); *Winter v. NRDC*, 555 U.S. 7 (2008); *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Fund*, 598 F.3d 30 (2d Cir. 2010). To that end, the courts analyze the following four factors: "(1) whether there is a likelihood of successful reorganization; (2) whether there is an imminent irreparable harm to the estate in the absence of an injunction; (3) whether the balance of harms tips in favor of the moving party; and (4) whether the public interest weighs in favor of an injunction." *Id.* These four factors are evaluated using "a flexible approach[,] and no one factor is determinative." *In re Calpine Corp.*, 365 B.R. 401, 409 (S.D.N.Y.

2007) (citation omitted). Here, each of these factors weighs in favor of the issuance of the requested injunction and restraining order staying the Guaranty Action.

### A. The Debtor Has A Reasonable Likelihood of A Successful Reorganization.

With respect to the first element of the injunction analysis, "a reorganization may be considered likely to succeed so long as the prospects of reorganization 'remain viable,' and the 'the [d]ebtors are substantially more likely to reorganize' with the injunction in place.'" *In re Purdue Pharm. L.P.*, 619 B.R. at 59 (citations and internal citations omitted). At the initial stages of a bankruptcy proceeding, the courts have found this factor is satisfied if the bankruptcy is proceeding on track and there is no reason (other than those proffered in support of the injunction) "to suspect that the[] reorganization will fail…." *In re Lyondell Chem. Co.*, 402 B.R. at 590. This standard is easily satisfied here.

In the matter at hand, the Debtor continues to engage in extensive reorganization efforts. The Debtor has already filed its Plan. (*See* Goldwasser Decl. at ¶ 3.) The Debtor's Plan is structured to maximize creditor recoveries by reinstatement of the Debtor's senior secured debt under Section 1124 of the Bankruptcy Code by curing defaults and then paying all creditors in full. Thus, the first injunction factor weighs in favor of the issuance of an injunction.

### B. The Debtor Will Be Irreparably Harmed In The Absence Of An Injunction.

The second element of the injunction analysis likewise weight in favor of the issuance of an injunction and restraints. The harm element of the injunction analysis is satisfied if "the action to be enjoined is one that threatens the reorganization process or which would impair the court's jurisdiction with respect to a case before it." *In re Chateaugay Corp.*, 201 B.R. at 71 (citation omitted); *In re Alert Holdings, Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992) ("Where there is a showing that the action sought to be enjoined would embarrass, burden, delay or otherwise

impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate and reorganization prospects, the Bankruptcy Court may issue injunctive relief." (citing *Matter of Invs. Funding Corp. of N.Y., IFC Collateral Corp*., 547 F.2d 13, 16 (2d Cir. 1976)). Threats to the reorganization process have been found where: (i) there is risk to the debtor that collateral estoppel will affect its rights if a judgment is entered against a non-debtor; (ii) the debtor's property would be harmed; and (iii) key personnel would be distracted by the action against the non-debtor. *In re Calpine Corp*., 365 B.R. at 409; *In re Lomas Fin. Corp*., 117 B.R. 64, 66-67 (S.D.N.Y. 1990). Only one of these factors needs to exist for this element to satisfy the second element of the injunction analysis. *In re Calpine Corp*., 365 B.R. at 410.

It cannot be legitimately disputed that the Guaranty Action poses an imminent and substantial risk to the reorganization process. *In re Calpine Corp.*, 365 B.R. 401, 410 (S.D.N.Y. 2007), *aff'd*, 365 B.R. 401 (S.D.N.Y. 2007) (citing *Hawaii Structural Ironworkers Pension Tr. Fund v. Calpine Corp*., No. 06-cv-5358, 2006 WL 3755175, at *5 (S.D.N.Y. Dec. 20, 2006)). The Debtor's Plan, which has already been filed, requires both Mr. Rudich's active participation, creditworthiness, and assets to effectuate. (Goldwasser Decl. at ¶ 4.) In fact, Mr. Rudich may be required to contribute capital and/or provide a guarantee. (*Id.*; *see also* Rudich Decl. at ¶¶ 7-9.) As the sole equity holder, Mr. Rudich has already been actively pursuing potential financing sources to support the Plan, including using his personal assets and creditworthiness as collateral or financial backing. (Rudich Decl. at ¶¶ 7-9 & Ex. A.) He is also currently the most viable and likely only source of such equity funding. (Goldwasser Decl. at ¶ 3.) These efforts have thus far resulted the Debtor obtaining an indicative term sheet from Trevian Capital that reflects serious interest in funding a loan in an amount of up to $31 million. (Rudich Decl., Ex. A.) Negotiations with Trevian Capital are ongoing. (*Id.* at ¶ 8.) However, if a judgment or prejudgment attachment

8

is granted against Mr. Rudich, it will limit Mr. Rudich's ability to contribute capital, access credit, or serve as a guarantor in connection with plan financing. (Goldwasser Decl. at ¶ 6; Rudich Decl. at ¶ 9.) Such a limitation would pose a significant risk to the Debtor's ability to confirm the Plan and, as such, the pending Guaranty Action—and, in particular, the motion for prejudgment attachment and for summary judgment—create unnecessary risk and interference at a critical time, and may chill or delay ongoing financing discussions.

The Guaranty Action's distracting effect on Mr. Rudich alone would constitute sufficient irreparable injury warranting a stay of the action. *In re Lazarus Burman Assocs*., 161 B.R. at 901 (finding irreparable harm where "the Principals' time and energy would be distracted both from the Debtors' daily business affairs and from the Debtors' progressing toward a plan of reorganization[]"). The reorganization process is at a crucial juncture - a plan for reorganization has been proposed and a confirmation hearing is in prospect. The Plan's success requires Mr. Rudich's undivided and unencumbered participation. However, Mr. Rudich cannot devote adequate attention and time to the reorganization and its funding while the Guaranty Action is proceeding at "break-neck speed." Between now and June 18, 2025, Mr. Rudich must: (i) respond to document demands; and (i) oppose a dispositive motion. (Dagostine Decl. at ¶¶ 4-5.) In addition, between now and August, Mr. Rudich must prepare for the evidentiary hearing concerning, and opposing, the prejudgment attachment application as well as Avonwood Credit's challenge to the requests to admit objections and the other interrogatories and document demands served on Mr. Rudich,

Even if, *arguendo*, Mr. Rudich could devote sufficient time and energy to the bankruptcy and the Guaranty Action *and* Mr. Rudich's distracted and limited participation is not a risk to the reorganization process, a risk of irreparable harm would still exist because the Guaranty Action

9

poses a risk to the Debtor's rights. Indeed, it is well settled that if a debtor's liability in a subsequent litigation may be based on collateral estoppel principles and findings made against a non-debtor, a risk of irreparable harm is present and a stay is appropriate. *See In re Calpine Corp.*, 354 B.R. at 49 (noting "courts apply [S]ection 105 of the Bankruptcy Code to enjoin litigation against non-debtors when an adverse judgment in that litigation will collaterally estop the debtor in subsequent litigation[]" (citations omitted)). This is precisely the case here. Avonwood Credit is actively seeking a judgment as to liability against Mr. Rudich based on facts and legal issues that impact the Debtor and its rights. (Dagostine Decl. at ¶¶ 6-7 & Exs. H-J.) Put differently, the factual and legal rulings sought by Avonwood Credit against Mr. Rudich will affect the Debtor's ability to defend against the Guaranty Action and expose it to "a significant risk of collateral estoppel, stare decisis and evidentiary prejudice." *In re Calpine Corp.*, 354 B.R. at 50; *Johns-Manville Corp. v. Asbestos Litig Grp. (In re JohnsManville)*, 26 B.R. 420, 429 (Bankr. S.D.N.Y. 1983), *aff'd in part*, 40 B.R. 219 (S.D.N.Y. 1984), *rev'd in part on other grounds*, 41 B.R. 926 (S.D.N.Y. 1984) (concluding that the risk of collateral estoppel would irreparably injure the estate and, thus, issuance of a stay of claims against nondebtors was warranted); *In re Am. Film Techs., Inc.*, 175 B.R. 847, 850-55 (Bankr. D. Del. 1994) (staying claims against debtor's directors and holding that a potential finding of liability against such directors would expose the debtor to the risk of being collaterally estopped from denying liability for the directors' actions).

In light of the foregoing, there is no scenario in which the Guaranty Action can be pursued in the manner currently attempted by Avonwood Credit without any risk of irreparable injury to the bankruptcy estate and/or Debtor. As such, this injunction factor militates in favor of the issuance of an injunction.

### C.  The Remainder Of The Injunction Factors Weigh In Favor Of The Issuance Of A Stay.

The final two elements of the injunction analysis – the balance of the equities and public interest – also support the issuance of an injunction.  Turning first to the balance of the equities, while the Debtor's rights will be prejudiced without the issuance of an injunction, *see* Section II(B), *supra*, Avonwood Credit's rights will only suffer a *de minimis* impact upon the issuance of temporary restraints and an injunction.  Avonwood Credit's rights as a creditor will not be invalidated.  At worst, Avonwood Credit will suffer only a minor delay in the adjudication of its rights – the Plan has already been filed and a confirmation hearing requested.  Minor delay alone is an insufficient basis to warrant the denial of an injunction.  *In re W.R. Grace & Co.*, 386 B.R. 17, 35 (Bankr. D. Del. 2008) (harm to the Debtor not outweighed by mere delay in the prosecution of state law claims or actions).  Thus, the balance of the equities militates in favor of the stay.  *In re Steven P. Nelson, D.C., P.A.*, 140 B.R. 814, 817 (Bankr. M.D. Fla. 1992) ("The Court is satisfied that the interest in preventing imminent and continuing injury to the Debtor if the Guaranty litigation is permitted to continue against Nelson would far outweigh the harm which might be visited on the Defendants if they are temporarily prohibited to prosecute their suits in the State Court against Nelson based on his guarantee of the primary obligations of the Debtor and 3–S.").

The public interest is likewise served by the issuance of the requested injunction.  "The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization."  *In re Lazarus Burman Assocs.*, 161 B.R. at 901 (citation omitted); *In re Calpine Corp.*, 354 B.R. at 49.  The public interest is not served by Avonwood Credit continuing to test the boundaries of the automatic stay and attempting to place its own interests above those of other creditors through Mr. Rudich through a dubious business model built on violating traditional banking norms.  Consequently, all of the injunction weigh in favor of the issuance of the stay.

Section 105 should therefore be invoked here and the Guaranty Action stayed as against Mr. Rudich.

### D. A Temporary Restraining Order Is Warranted.

For the same reasons, the Debtor is also entitled to the issuance of a temporary restraining order prohibiting Avonwood Credit from pursuing its claims against Mr. Rudich in the Guaranty Action pending the resolution of this application. Such limited, narrowly-tailored restraints are necessary to preserve the status quo and prevent the immediate irreparable harm the progression of that action poses.

"The standards for a TRO are the same as those governing the granting of preliminary injunctive relief." *Roberts v. Atl. Recording Corp.*, 892 F. Supp. 83, 86 (S.D.N.Y. 1995); *see also In re Prudential Lines, Inc.*, 107 B.R. 832, 835 n.4 (Bankr. S.D.N.Y. 1989) ("Bankruptcy Rule 7065 makes Rule 65 of the Federal Rules of Civil Procedure applicable to adversary proceedings. Under Rule 65(b), a temporary restraining order may be granted 'upon a summary showing of its necessity in order to prevent immediate and irreparable injury.'" (citation omitted)). The harm posed by the prosecution of the Guaranty Action as against Mr. Rudich is immediate and irreparable. There is already a motion for partial summary judgment pending that seeks factual and legal rulings from the state court that will prejudice the Debtor's rights and defenses in that action and subject it to res judicata issues. Mr. Rudich is likewise defending himself against Avonwood Credit's ongoing pre-judgment attachment efforts. Succinctly put: the narrow temporary restraining order request through this application is urgently required.

Any requirement that the Debtor post a bond upon the issuance of any restraining order should similarly be excused. As explicitly set forth in Bankruptcy Rule 7065, a "temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession *without* compliance with Rule 65(c)." Fed. R. Bank. P. 7065 (emphasis

added). The Court "has 'wide discretion to set the amount of a bond [under Rule 65(c)], and even to dispense with the bond requirement.'" *In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175, 184 (Bankr. S.D.N.Y. 2022). Here, the restraining order is limited is limited in scope and duration and would only be in effect until the Court rules on this pending application. It would not legitimately harm Avonwood Credit and is necessary to protect the Debtor and reorganization process. Thus, the posting of any security is, respectfully, unnecessary. *See, e.g.*, *id.*; *see also Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (security typically unnecessary "where there has been no proof of likelihood of harm, or where the injunctive order was issued 'to aid and preserve the court's jurisdiction over the subject matter involved.'").

In sum, the need for temporary and injunctive relief under the present circumstances is clear. The Guaranty Action must, and should, be enjoined as against the Debtor's sole member to protect the Debtor's rights in the Guaranty Action and this proceeding.

### III.    ALTERNATIVELY, THE AUTOMATIC STAY SHOULD BE EXTENDED TO MR. RUDICH.

Even if the Court is unpersuaded that a restraining order and injunction should issue pursuant to 11 U.S.C. § 105(a), a stay of the Guaranty Action is appropriate under alternative grounds: 11 U.S.C. § 362(a).

As aforesaid, the fundamental issues with proceeding simultaneously with the Guaranty Action as against Mr. Rudich and the bankruptcy proceeding is two-fold: (i) there can be no judgment against Mr. Rudich without impacting the Debtor; and (ii) there may be no viable path to reorganization currently available without Mr. Rudich's ability to generate capital and obtain funding, which the Guaranty Action would thwart. Extending the automatic stay to Mr. Rudich is therefore necessary to protect the Debtor's right to the breathing room accorded by automatic stay and preserve its reorganization efforts. *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 510 (3d

Cir. 1997) ("Courts have also extended the stay to nondebtor third parties where stay protection is essential to the debtor's efforts of reorganization." (citations omitted)). As such, the automatic stay provided for under 11 U.S.C. § 362(a) can be, and should be, applied to Mr. Rudich notwithstanding the fact that the is a non-debtor. *In re Durr Mech. Constr*., Inc., 604 B.R. 131, 136 (Bankr. S.D.N.Y. 2019) (citing *Queenie, Ltd. v. Nygard Intern*., 312 F.3d 282 (2d Cir. 2003) (automatic stay can be extended "in circumstances where a claim against the non-debtor will have an immediate, adverse economic impact on the estate[]")).

At bottom, permitting the Guaranty Action to proceed as against Mr. Rudich even as to liability would result in the type of "uncontrolled scramble" for assets the automatic stay is designed to prevent, *In re Colonial Realty Co.*, 980 F.2d 125, 133 (2d Cir. 1992) (citation omitted), and "furthers the Congressional intent to give debtors a respite from litigation by not 'permitting indirectly what is expressly prohibited in the Code.'" *Tenas-Reynard*, 2016 WL 1276451 at *4 (citation omitted).

## CONCLUSION

For all the foregoing reasons, the Debtor's motion should be granted in its entirety and the Guaranty Action stayed either pursuant to Section 105(a). "[T]he overriding purposes of the Bankruptcy Code is to provide debtors with breathing room from their creditors to increase the chances of a successful reorganization[, and] at times [S]ection 105 must be invoked on their behalf to prevent creditors from frustrating an otherwise-viable reorganization effort by pursuing actions against them." *In re Calpine Corp.*, 354 B.R. at 49. As the record plainly reflects, Avonwood Credit is seeking to do everything within its power to neutralize the automatic stay. These efforts should not, and cannot, be countenanced. In the alternative, the automatic stay memorialized in

11 U.S.C. § 362(a) should be extended to Mr. Rudich to protect the Debtor's rights.

Dated: New York, New York
       June 10, 2025

                                              BACKENROTH FRANKEL & KRINSKY, LLP
                                              Attorneys for the Debtor

                                          By: s/Mark A. Frankel
                                                488 Madison Avenue
                                                New York, New York  10022
                                                (212) 593-1100